IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JULIE BOEHM-SCHARFF,       )
                                   )
                                   )
       Plaintiff,         )  2:23-cv-227-NR
                                   )
      v.                       )
                                   )
RUE21, INC.,               )
                                   )
                                   )
       Defendant.     )

## MEMORANDUM ORDER

Plaintiff Julie Boehm-Scharff brings claims against her former employer Defendant rue21, Inc., alleging that rue21 wrongfully terminated her employment because she refused to take a COVID-19 vaccine. A discussion of the merits of her claims are for another day, however. Today, the Court has to first decide whether these claims must be arbitrated pursuant to a four-page Dispute Resolution Agreement that Ms. Boehm-Scharff purportedly electronically signed as part of rue21's onboarding process when she was hired.

Ms. Boehm-Scharff disputes that she ever saw or signed that agreement. But a time-stamped electronic signature in the form of a red checkmark says otherwise. Rue21 argues that this checkmark, along with other evidence it has presented, proves that Ms. Boehm-Scharff did see and sign the agreement, despite her claims to the contrary. The contours of this dispute are nothing new to the Court and highlight the challenge presented by employers digitizing much of the process for onboarding new employees. Cases in which the parties duke it out over whether an electronically signed arbitration agreement is enforceable are now routine not only here, but in courts across the country. Often these cases turn on the degree of certainty with which the employee denies having ever signed the agreement. This case is no different.

Here, Ms. Boehm-Scharff's testimony that she can't remember much of her onboarding process and equivocal denials about ever signing the Dispute Resolution Agreement are not enough to create a genuine dispute of material fact as to the formation of that agreement. This is so especially when contrasted with the digital paper trail that rue21 has offered to support its version of events. Therefore, and as will be elaborated on below, the Court grants rue21's motion to compel arbitration.

## BACKGROUND

Ms. Boehm Scharff began working for rue21 as a Social Media Marketing Manager in November 2017. ECF 1, ¶ 10. A few years later, rue21 promoted her to Director of Brand Marketing & Social Media. *Id.* Throughout her employment, Ms. Boehm-Scharff used an office at the Support Center. *Id.* However, because of the COVID-19 outbreak, all of rue21's Support Center employees, including Ms. Boehm-Scharff, began working remotely in March 2020. *Id.*

In January 2022, rue21 announced a mandatory COVID-19 vaccination requirement, which required employees who would normally be working at the Support Center to receive a vaccine. *Id.* ¶ 12. Any employee who refused would face immediate termination. *Id.* Ms. Boehm-Scharff suffers from an autoimmune disease called "systemic lupus erythematosus." *Id.* ¶ 22. According to her, this condition makes it medically inadvisable, and potentially dangerous for her to receive any COVID-19 vaccine.

On January 6, 2022, Ms. Boehm-Scharff notified rue21 that she could not comply with the vaccine mandate for medical and religious reasons. *Id.* ¶ 25. In connection with her request for an accommodation under the ADA, she submitted a letter from her primary physician. *Id.* ¶ 26. That letter stated that taking the COVID-19 vaccine could "increase her risk of serious health complications, including death." *Id.* In response, rue21 asked that Ms. Boehm-Scharff's physician complete a Medical Certification Form—COVID-19 Request for Exemption from Mandatory

Vaccine Policy. *Id.* ¶ 28. When he refused to do so, rue21 "flatly refused to consider [Ms. Boehm-Scharff's] request for accommodation." *Id.* ¶ 30.

Ms. Boehm-Scharff also claims that rue21 "did not meaningfully consider [her] request for religious accommodation," even though she completed rue21's required "Request for Religious Accommodation—COVID-19 Vaccination Requirement" form. *Id.* ¶ 41-42.

Ms. Boehm-Scharff ultimately refused to receive the vaccine, so rue21 terminated her employment. *Id.* ¶¶ 52-53.

From these core facts, Ms. Boehm-Scharff alleges that rue21 violated the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, the Pennsylvania Human Relations Act, and the Pennsylvania Wage Payment Collection Law. *Id.* ¶ 1. In response, rue21 moves to compel arbitration based on a mandatory arbitration provision contained in a Dispute Resolution Agreement that rue21 claims Ms. Boehm-Scharff signed during her onboarding process after she was hired in 2017. ECF 31. The Dispute Resolution Agreement is four pages long and contains these provisions concerning its scope:

> 1.   **Scope of the Agreement**. This Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law and requires that all such disputes to be resolved only by an arbitrator through final and binding arbitration and noy by way of court or jury trial. … This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and evidences a transaction involving commerce.
>
> 2.   **Claims Covered by This Agreement.** This Agreement applies to any dispute arising out of or related to Associate's employment with rue21, inc. or one of its affiliates, subsidiaries or parent companies ("rue21") or the termination of such employment, that rue21 may have against Associate or Associate may have against any of the following: (1) rue21; (2) rue21's past, current and future officers, directors, employees, or agents; (3) rue21's benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates, employees and agents; and (4) all successors and assigns of any of them. This Agreement requires all such claims to be resolved by an arbitrator through final and binding arbitration and not by way of court or a jury trial. Such disputes include without

limitation disputes arising out of or relating to interpretation or application of the Agreement, including the enforceability, revocability or validity of the Agreement or any portion of the Agreement. The Agreement also applies, without limitation, to disputes regarding the employment relationship, trade secrets, unfair competition, compensation, breaks and rest periods, termination, discrimination, harassment or retaliation, and claims arising under the Uniform Trade Secrets Act, Title VII of the Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act, Genetic Information Non-Discrimination Act, and state statutes, if any, addressing the same or similar subject matters, and all other statutory and common law claims.

ECF 32-3, ¶¶ 1-2. It also contains an Opt-Out Provision, which states, in relevant part:

> 6. **Opt-Out Provision.** An Associate may submit a form stating that the Associate wishes to opt out and not be subject to this Agreement. … In order to be effective, the signed and dated Form must be returned to the Human Resources Department within 30 days of the Associate's receipt of this Agreement. … Should an Associate not opt out of this Agreement within 30 days of the Associate's receipt of this Agreement, continuing the Associate's employment constitutes mutual acceptance of the terms of this Agreement by Associate and the Company.

*Id.* ¶ 6.

Ms. Boehm-Scharff opposes arbitration. ECF 34. She claims she doesn't remember ever signing the Dispute Resolution Agreement and is thus not bound by it. To help clear up this issue, the Court ordered limited discovery on whether an arbitration agreement was formed. ECF 20. That discovery has now been completed and rue21's request that the Court compel this matter to arbitration is ready for final disposition.

## LEGAL STANDARD

"[B]efore compelling arbitration pursuant to the Federal Arbitration Act, a court must determine that (1) a valid agreement to arbitrate exists, and (2) the

particular dispute falls within the scope of that agreement." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009).  The first step in this process is critical because "[b]efore a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect." *McCoy v. Pan Am. Grp.*, No. 21-389, 2022 WL 1136953, at *1 (W.D. Pa. Apr. 18, 2022) (Wiegand, J.) (cleaned up).

Because the Court previously ordered limited fact discovery on the threshold issue of whether an arbitration agreement was formed by the parties, the Court analyzes rue21's motion to compel arbitration under the Rule 56 standard for summary judgment.  *See Guidotti v. Legal Helpers Debt Resol., LLC*, 716 F.3d 764, 776 (3d Cir. 2013).

Under that standard, the party opposing summary judgment must show that there is a genuine dispute of material fact and must support that assertion by "citing to particular parts of … the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials." *Id.* at 772 (cleaned up).  In reviewing that record, though, the Court must "view the facts and draw inferences in the light most favorable to the nonmoving party." *Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 228 (3d Cir. 2012) (cleaned up).  The Court "may not make credibility determinations or weigh the evidence." *Guidotti*, 716 F.3d at 772 (cleaned up).

If a genuine dispute of material fact on whether a validly formed and enforceable arbitration agreement exists remains after the Court conducts its Rule 56 analysis, "the [C]ourt must proceed summarily to trial on the making of the arbitration agreement." *MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 406 (3d Cir. 2020) (cleaned up); *see also* 9 U.S.C. § 4 ("If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.").

## DISCUSSION & ANALYSIS

The issue before the Court is a narrow one; namely, whether there is an enforceable agreement to arbitrate. Ms. Boehm-Scharff does not dispute that her claims would fall within the scope of the arbitration provision in the Dispute Resolution Agreement. And for good reason; the scope of that provision is broad and specifically covers the substantive claims that Ms. Boehm-Scharff is pursuing against rue21. *Compare* ECF 32-3, ¶ 2, with ECF 1. Thus, the only thing that rue21 must prove is that the arbitration agreement between it and Ms. Boehm-Scharff actually exists.

To determine whether that agreement exists, the Court turns to "ordinary state-law principles that govern the formation of contracts." *Kirleis*, 560 F.3d at 160 (cleaned up). Here, that means the Court will follow Pennsylvania law.[1] Under Pennsylvania law, the critical issue is whether rue21 can show that Ms. Boehm-Scharff manifested an intent to be bound by the agreement. *See Barnes v. Festival Fun Parks, LLC*, No. 22-165, 2023 WL 4209745, at *4 (W.D. Pa. June 27, 2023) (Haines, J.) (state contract principles govern agreements to arbitrate, which require a mutual manifestation of intent to be bound, sufficiently definite terms, and consideration).[2]

Ms. Boehm-Scharff says she doesn't remember ever seeing or signing the agreement during her onboarding process or otherwise, and therefore she necessarily couldn't have manifested an assent to be bound. But weighing the competing evidence offered by the parties, the Court finds that Ms. Boehm-Scharff has not

---

[1] The parties agree that Pennsylvania applies because "Ms. Boehm-Scharff is a resident of Pennsylvania, was employed by rue21, rue21 is headquartered in Warrendale, Pennsylvania, and the events that allegedly give rise to Ms. Boehm-Scharff's claims occurred in Pennsylvania." ECF 32, p. 10; *accord* ECF 34, p. 13.

[2] The other requirements—sufficiently definite terms and consideration—are not in dispute.

offered enough to create a genuine issue of fact that would demand a trial on the formation of the Dispute Resolution Agreement.

To meet its initial burden, rue21 produced a copy of the Dispute Resolution Agreement that was electronically signed by Ms. Boehm-Scharff.  ECF 32-3.  Rue21 also goes a step further by explaining how that agreement came to be signed.

According to Kim Strauss, rue21's Human Resources Business Partner, during the relevant period, when it extended an offer of employment to a potential new employee, that person was sent a "welcome" email to their personal email account with a link to rue21's electronic Onboarding Portal.[3]  ECF 32-2, ¶ 11.  That email contained a unique login name and instructions on how to perform a password reset so that the potential new employee could access rue21's onboarding materials.  *Id.* ¶¶ 11-14.  Those onboarding materials included rue21's Dispute Resolution Agreement. *Id.* ¶ 15.  The potential new employee could read, review, and print the agreement, if they wanted.  *Id.*  No employees at rue21 had access to edit another individual's onboarding paperwork on the Onboarding Portal.  *Id.*  Nor could any employee complete onboarding paperwork on someone else's behalf.  *Id.* ¶ 9, Ex. 1.  Once the potential new employee completed the onboarding paperwork, it could not be modified by anyone other than the potential new employee.  *Id.* ¶ 10, Ex. 1.  Completing this paperwork was a prerequisite to starting employment.  ECF 34-1, Vol. II, 39:8-11.

Rue21 followed this process when it hired Ms. Boehm-Scharff.  The timeline, which is established in large part by emails produced by Ms. Boehm-Scharff, is helpful:

- On November 7, 2017, at 9:06 a.m., Ms. Boehm-Scharff received the "welcome" email from Amy Puron, rue21's corporate recruiter, through

---

[3] The Onboarding Portal was operated and managed by iCIMS, a third-party vendor, at the time Ms. Boehm-Scharff was hired.

an iCIMS email account, which provided Ms. Boehm Scharff with her login name and link to reset her password.  ECF 32-5, Ex. 4.

- Eight minutes later, at 9:14 a.m., Ms. Boehm-Scharff requested to reset her password.  *Id.* at Ex. 5.

- Soon after, Ms. Boehm-Scharff electronically signed these documents:

| Document | Time |
|---|---|
| Dispute Resolution Agreement | 9:23 a.m. |
| Photo and Recording Release Form | 9:24 a.m. |
| Residency Certification Form | 9:24 a.m. |
| Employee's Rights & Duties Under Section 306(F.1) of the Pennsylvania Workers' Compensation Act Certification | 9:24 a.m. |
| Associate Handbook Acknowledgement | 4:12 p.m. |

- On November 10, 2017, at 1:04 a.m., Ms. Boehm-Scharf received an email stating that she had incomplete tasks in the Onboarding Portal. ECF 32-5, Ex. 12.

- A few hours later, at 9:14 a.m., Ms. Boehm-Scharff once again accessed the Onboarding Portal to complete her Form W-4.  *Id.* at Ex. 13.

- After she did so, she sent an email to Ms. Puron at 9:16 a.m., confirming that she "completed all the tasks in the portal."  ECF 32-5, Ex. 14

Taking this evidence together, rue21 has carried its initial burden.[4]

---

[4] Ms. Boehm-Scharff objects to the Court's consideration of Ms. Strauss's declaration and a declaration submitted by Tara Elders, which establish many of the facts outlined above.  ECF 34, p. 12.  She takes issue with the fact that neither of these women was employed by rue21 "in 2017 when [Ms. Boehm-Scharff] was hired" and, as such, the declarations "are not based on personal knowledge."  *Id.*  The Court overrules these objections.  Starting with Ms. Strauss's declaration, it is based on her personal familiarity "with rue21's employee onboarding processes, including its policies and practices regarding arbitration" and her investigation into the onboarding process in place when rue21 used iCIMS as its onboarding software provider.  ECF 32-2, ¶¶4, 6.  That's enough.  *Castillo v. Alere N.A., Inc.*, No. 21-1519,

But that doesn't end the analysis; it just means that the burden shifts to Ms. Boehm-Scharff, as the non-moving party, to present contrary evidence that would cast doubt on the existence of the agreement. To do so, however, Ms. Boehm-Scharff cannot rely on "mere naked assertion[s]." *Guidotti*, 716 F.3d at 777 (cleaned up). Instead, she needs to offer "an unequivocal denial that the agreement had been made," accompanied by supporting facts. *Id.* at 778. Ms. Boehm-Scharff's evidence disputing that she signed the Dispute Resolution Agreement "is too slight to bend the inferences in [her] favor." *Reddick v. Hewlett-Packard Co.*, No. 20-4597, 2021 WL 5034836, at *6 (N.D. Ga. May 20, 2021).

At best, the Court can only infer from Ms. Boehm-Scharff's testimony that she simply doesn't remember whether she signed the Dispute Resolution Agreement. Indeed, during her deposition, Ms. Boehm-Scharff stated on at least five occasions that she didn't remember the Dispute Resolution Agreement. ECF 34-1, Vol. II, 20:16-20 (answering "I don't" when asked if she recalled ever seeing the Dispute Resolution Agreement), 23:3-13 ("So the answer is I don't remember this document."), 36:15-23 ("I do not recall reading this form"), 54:8 ("Again, no recollection" of the arbitration agreement), 56:4-58:17 ("I'm suggesting what I'm being asked is if I remember that agreement and I don't."). In truth, Ms. Boehm-Scharff didn't really remember anything about her onboarding process: "I don't remember what I did last week let alone six years ago, so I don't recall any of this." *Id.* at 20:16-20. But that

---

2023 WL 4630621, at *4 (S.D. Cal. July 19, 2023) *appeal docketed*, No. 23-55712 (9th Cir. Aug. 14, 2023) ("The Court denies Plaintiff's objections regarding the declaration of Mona Oliver as lacking foundation, lacking personal knowledge, speculation, hearsay, and vagueness as to time. Oliver's declaration is based on her personal knowledge, and by virtue of her role as a Manger, Human Resources, her familiarity with the Defendants as well as access to records pertaining to 'employees of Abbott Laboratories and its past and present subsidiaries, as well as contingent workers assigned to these entities.'"). Ms. Elders is simply a "custodian of records," and her statements are based on her personal review of Ms. Boehm-Scharff's "personnel and onboarding documents." ECF 32-1, ¶ 2.

memory lapse cannot sustain a contrary inference against her formation of the arbitration agreement because "evidence that is consistent with everything … tends to prove nothing." *Reddick*, 2021 WL 5034836, at \*7. "In other words, one can accept with perfect consistency—i.e., without factual dispute—that [Ms. Boehm-Scharff] agreed to arbitrate and, at the same time, that [she] doesn't remember doing so." *Id.*

Additionally, when Ms. Boehm-Scharff was given an opportunity to unequivocally deny that she ever signed the Dispute Resolution Agreement (or any of the other documents she signed as part of the onboarding process), she demurred:

> Q:  So do you deny that you reviewed and signed any of the onboarding documents that state the electronic signature with your name on them?
>
> A:  Is the questioning [sic] denying or remembering?
>
> Q:  Denying.
>
> A:  ***No, I don't deny***.

ECF 34-1, Vol. II, 51:2-9 (emphasis added). And then when pressed, she admitted that it was possible that she had signed the Dispute Resolution Agreement:

> Q:  So is it possible that you did click through and sign—electronically sign the arbitration agreement regardless of remembering whether or not you did so?
>
> A:  I mean, anything is possible.[5]

*Id.* at 55:16-20.  This is the kind of textbook equivocation that the Third Circuit has

---

[5] Ms. Boehm-Scharff argues that this question was "facially objectionable" because "it comments on a metaphysical possibility" and is therefore irrelevant and inadmissible.  ECF 34, p. 12.  In support, she cites some irrelevant authority on the inadmissibility of speculative expert testimony.  *Id.* at p. 13.  Ms. Boehm-Scharff is obviously a fact witness and not being offered as an expert on anything.  The disputed testimony is highly relevant—it speaks to the reliability of Ms. Boehm-Scharff's claim that she has never seen or signed the Dispute Resolution Agreement.  Here, she's acknowledging, based on her own personal knowledge, that she may have signed it, even though she can't really remember.

said will not suffice. *See Guidotti*, 716 F.3d at 778. Many other courts agree. *See, e.g.*, *Mitchell v. Craftworks Restaurants & Breweries, Inc.*, No. 18-879, 2018 WL 5297815, at *7 (D.D.C. Oct. 25, 2018) ("Ms. Mitchell does not outright deny that she electronically signed the Arbitration Agreement" and her "qualified denial is not enough to create a genuine dispute regarding her assent to the Agreement."); *Dickson v. Continuum Glob. Sols., LLC*, No. 21-1528, 2022 WL 847215, at *6 (N.D. Tex. Mar. 22, 2022) ("Plaintiffs' Declarations are all substantially the same. They all broadly state: 'I do not recall ever seeing, signing, or agreeing to arbitrate any claim against CGS.' … Such statements are not sufficient unequivocal denials." (cleaned up)); *Snow v. Genesis Eldercare Rehab. Servs., LLC*, No. 22-1794, 2023 WL 371085, at *3 (D.S.C. Jan. 24, 2023) (granting motion to compel where plaintiff "flatly denied seeing, signing, or agreeing to the Arbitration Agreement, but d[id] not offer any corroborating evidence." (cleaned up)).

Ms. Boehm-Scharff's additional testimony—that if she had seen the agreement, she "would have opted out" or at least created a calendar reminder to opt out—doesn't change the outcome. ECF 34-1, Vol. II, 27:24-28:12. According to her, she wouldn't "sign up" for arbitration because the Dispute Resolution Agreement contained "four pages long of legal jargon," which would have been a "red flag" to her. *Id.* at 55:4-5. And since there's no record of her opting out, that means she was never presented with the agreement. But even on the point about what she supposedly would have done in response to rue21 asking her to sign the Dispute Resolution Agreement, Ms. Boehm-Scharff equivocates.

When she was asked more directly whether she believed she "would have chosen not to sign the agreement with respect to [her] onboarding process at rue21," she replied, "[t]o be honest, I don't even know." *Id.* at 30:15-24. She didn't know because she only learned "what the difference between suing and arbitration was" by filing this case and going through the discovery process. *Id.* Ms. Boehm-Scharff's

shifting belief about whether "she *would have*" opted out "is, without further foundation, the type of conclusory speculation that cannot raise a genuine question of fact." *Reddick*, 2021 WL 5034836, at *8 (citations omitted); *see also Coffey v. OK Foods Inc.*, --- F. Supp. 3d ---, 2023 WL 122919, at *4 (W.D. Ark. Jan 6, 2023) (enforcing arbitration agreement where plaintiff's "arguments only provide conjecture, speculation, or fantasy" because "[s]uch arguments are insufficient to defeat summary judgment."); *Duval v. Costco Wholesale Corp.*, No. 22-2338, 2023 WL 3852694, at *3 (N.D. Cal. June 5, 2023) (granting motion to compel arbitration where plaintiff "also state[d] that she would never have agreed to arbitration with Costco.").

Thus, even after fully crediting Ms. Boehm-Scharff's sworn statements and drawing all justifiable inferences in her favor, "the evidence here, consisting of uncontroverted sworn testimony regarding [rue21's] hiring practice and [Ms. Boehm-Scharff's] electronically recorded acceptance," establish Ms. Boehm-Scharff's assent to the Dispute Resolution Agreement. *Reddick*, 2021 WL 5034836, at *9. Perhaps the outcome would be different if Ms. Boehm-Scharff had—at any point—provided a statement under oath flatly denying that she ever saw or signed the Dispute Resolution Agreement. But that never happened.[6] The Court will therefore enforce the terms of the parties' Dispute Resolution Agreement and submit the case to arbitration. *Beasenburg v. Ultragenyx Pharm., Inc.*, No. 22-4022, 2023 WL 5993169, at *3 (D.S.C. Sept. 15, 2023) ("Likewise, with respect to Plaintiff's assertion that she did not agree to the terms and conditions and was never provided with a copy, the evidence of record clearly establishes that Plaintiff accessed the agreement during

---

[6] Even then, this Court has held that a simple denial in the face of an electronic trail of communications that show an employee received and submitted an arbitration agreement isn't enough to create a genuine dispute of material fact. *See Juric v. Dick's Sporting Goods, Inc.*, No. 20-651, 2020 WL 4450328, at *10 (W.D. Pa. Aug. 3, 2020) (Horan, J.) ("[W]here plaintiffs denied agreeing to arbitration but electronic records proved otherwise, courts have rejected those challenges as a basis to deny contract formation." (collecting cases)).

the onboarding process and signed the agreement using an electronic signature, which has the same force and effect as a signature in writing, and Plaintiff offers no evidence to support her entirely conclusory assertions." (cleaned up)).

One final thing. Since all of Ms. Boehm-Scharff's claims are arbitrable, and neither party has requested a stay in the first instance, the Court will dismiss this action rather than stay it. *See HealthplanCRM, LLC v. AvMed, Inc.*, 458 F. Supp. 3d 308, 338 (W.D. Pa. 2020) (Ranjan, J.); *Gedid v. Huntington Nat'l Bank*, No. 11-1000, 2012 WL 691637, at *7 (W.D. Pa. Feb. 10, 2012) (Eddy, M.J.) (citation omitted).

*   *   *

**AND NOW**, this 30th day of October, 2023, it is hereby **ORDERED** that rue21's Renewed Motion to Dismiss, or Alternatively, to Stay Further Judicial Proceedings and Compel Arbitration (ECF 31) is **GRANTED.** All claims are hereby **COMPELLED** to arbitration consistent with the parties' agreement. The complaint (ECF 1) is hereby **DISMISSED** without prejudice. The Clerk of this Court shall mark this case as **CLOSED**.

BY THE COURT:

/s/ *J. Nicholas Ranjan*
United States District Judge